## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**FILED**

APR 2 9 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Amadou N'Diaye
827 South James Road
Columbus, OH 43227

    Plaintiff

    v.

David Solomon,
c/o Office of the Legal Adviser
Department of State
Washington, DC 20520-6419

    Defendant,

Carrie Hessler-Radalet
c/o Office of the Legal Adviser
Department of State
Washington, DC 20520-6419

    Defendant,

Jo Ellen Powell
c/o Office of the Legal Adviser
Department of State
Washington, DC 20520-6419

    Defendant,

United States of America
c/o Ronal C. Machen, Jr., Esq.
United States Attorney's Office
555 4th Street, NW
Washington, DC 20530

    Defendant.

JURY TRIAL DEMANDED

Case: 1:13-cv-00596
Assigned To : Jackson, Ketanji Brown
Assign. Date : 4/29/2013
Description: Admn Agency Review

**RECEIVED**

APR 1 1 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

1

COMPLAINT

## I.   JURISDICTION AND VENUE

1.  This action arises under the Administrative Procedure Act, 5 U.S.C. §§ 701 to 706.

2.  Venue is appropriate in this District under 28 USC § 1331.

## II.   PARTIES

3.  Plaintiff Amadou N'Diaye presently resides in Columbus, Ohio, and worked for the U.S.
    Mission in Nouakchott, Mauritania for over twenty years before immigrating to the
    United States in 2010 with a Special Immigrant Visa (SIV).

4.  Defendant David Solomon was an Administrative Officer in the Peace Corps office in
    Mauritania at the end of Mr. N'Diaye's employment.  He was Mr. N'Diaye's direct
    supervisor and responsible for distributing Mr. N'Diaye's due severance benefits.

5.  Defendant Carrie Hessler-Radelet is the Director of Peace Corps, which is responsible for
    withholding severance benefits from Mr. N'Diaye.

6.  Defendant Jo Ellen Powell is the U.S. Ambassador to the Islamic Republic of Mauritania.
    She is responsible for hearing all U.S. Mission employee appeals based on disputes that
    arise involving severance entitlements.

7.  Defendant United States of America holds executive authority over the Department of
    State and its sub parts, which are responsible for illegally withholding Mr. N'Diaye's
    severance benefits earned through his employment with the U.S. Mission and responsible
    for denying him an appeal regarding the denial of his severance benefits.

2

## III. FACTUAL BACKGROUND

8. Amadou N'diaye began to work for the U.S. Mission in Nouakchott on October 22, 1989 in the General Services Office Section as a Foreign Service National (FSN) employee. His position was receiving clerk.

9. On July 9, 1995, Mr. N'diaye transferred jobs within the U.S. Mission and became a cashier for Peace Corps.

10. Mr. N'Diaye's employment was governed by the Local Compensation Plan – Mauritania (LCP), a document which is published by the Department of State and governs the employment of locally employed staff of U.S. Government agencies represented in the U.S. Mission in Nouakchott, Mauritania. The LCP's Section 11 is devoted to Severance Pay Plans, including applicability and calculating the amount of payment.

11. At the time Mr. N'diaye transferred between agencies, he received no severance payment for his previous six years of employment, because according to the LCP, the time credited towards his severance payments would transfer between government agencies, and Peace Corps would accept responsibility for paying severance benefits.

12. Starting in October 2005, in recognition of his long time service to the U.S. government, Mr. N'diaye was given the opportunity to apply for a Special Immigrant Visa (SIV) from the U.S. and to immigrate there.

13. On June 15, 2009, Mr. N'diaye received his SIV status. Though the regulations regarding the SIV status now required Mr. N'diaye to end his employment with the U.S. Government, Peace Corps asked Mr. N'diaye to continue working while they trained his replacement.

14. Agreeing, Mr. N'Diaye continued to work for Peace Corps until November 20, 2009.

3

15. The LCP states that subject to certain rules, and consistent with prevailing employment practices in Mauritania, upon an employee's final separation from employment with the U. S. Government, that employee will be eligible for severance benefits.

16. Mr. N'Diaye's employment met qualifications for receiving severance benefits, and from June 2009 until November 2009, Mr. N'diaye was told by Defendant David Solomon and Country Director Obie Shaw that he would receive severance payments when his employment ended.

17. Peace Corps gave other signs it would pay Mr. N'Diaye. For instance, Peace Corps sought the opinion of the Regional Inspection of Labor Office of the Ministry of Function Public and Labor of the Islamic Republic of Mauritania ("Local Labor Office"). Two letters, written in September 23, 2009 and December 14, 2009, from this office found that Mr. N'diaye's statutorily-required resignation from employment with the U.S. government was one of "mutual consent," and that the Mauritanian Labor Code recognizes that contract termination by mutual consent is a form of contract termination that is entitled to severance pay.

18. Peace Corps also consulted a private attorney in Nouakchott, Mr. Abdel Hamid. On October 4, 2010, Mr. Hamid wrote a letter addressed to the director of Peace Corps Mauritania that concluded that Mr. N'diaye is due severance payments because his departure from his employment with Peace Corps was performed as a requirement to obtain his visa and should be considered a mutual negotiation between employer and employee under the Mauritanian Labor Code.

19. Several months before Mr. N'Diaye finished his employment, Defendant David Solomon also asked the U.S. Embassy in Nouakchott to create a spreadsheet that estimated the

4

amount in severances Mr. N'Diaye was expected to be paid by Peace Corps. This spreadsheet, based on a departure date of October 23, 2009, stated an expected amount due Mr. N'Diaye of over $8000.00 USD.

20. Finally, other U.S. Mission employees who received Special Immigrant Visas were awarded severance benefits when they resigned from their positions –in Mauritania as well as Niger, Benin, Togo, and Mali.  Mr. Diop Abdoulaye, a General Services Assistant who also worked for the U.S. Mission in Nouakchott for twenty years, received his SIV status in December 2009, resigned as required by law and received severance payments from Peace Corps in May 2010.

21. Mr. N'Diaye was living in the United States, expecting his severance payment, when he in late 2010 from people in the office of David Solomon that Solomon had no intention of paying Mr. N'Diaye his severances.

22. Mr. N'Diaye, through Counsel, wrote to Peace Corps' Washington D.C. office on May 16, 2011 asking that Mr. N'Diaye be paid his due benefits.  General Counsel for Peace Corps Marianne Perciaccante responded in a letter on May 27, 2011 that Peace Corps would not give Mr. N'Diaye his benefits.  That letter did not address why Peace Corps had changed its mind about paying Mr. N'Diaye his severances.  Counsel wrote a responsive letter on July 10, 2011, arguing further for Mr. N'Diaye's right to his benefits. Peace Corps never responded.

23. The Foreign Affairs Manual of the U. S. Department of State, Section 929 (b) stipulates that "a grievance procedure should be established for FSN employees by heads of overseas agencies in accordance with fair employment practices and conditions

prevailing in the locality of employment.  Authority for final decisions on FSN employee

grievances is delegated to the head of agency at post."

24. The LCP's section on Severance Pay Plans regarding Appeals for Severance Pay Plans,

Section 11 (7), states that "if disputes arise involving severance entitlements, the

employee has the right of appeal to the Ambassador designee.  The decision of the

Ambassador or designee shall be final. Rules governing grievance appeals are on file at

the Mission personnel office."

25. Starting in January 2012, Counsel made repeated requests through phone call, voicemail,

and email to the U.S. Mission of Nouakchott for a copy of the rules governing grievance

appeals.  At first, the U. S. Mission did not know of any such rules. Later requests were

never responded to.

26. On March 5, 2012, Counsel sent a written appeal regarding Peace Corps' denial of Mr.

N'Diaye's severance benefits to the U.S. Ambassador of the Islamic Republic of

Mauritania Jo Ellen Powell.

27. On May 3, 2012, Mr. N'Diaye received a response that Ambassador Powell declined to

consider the appeal.


FIRST CLAIM FOR RELIEF
DEFENDANTS' DECISION TO NOT PAY SEVERANCES
CAUSED PLAINTIFF LEGAL WRONG
(5 U.S.C. §§ 701-706)

28. The prior paragraphs are herein incorporated by reference.

29. Defendants David Solomon, Carrie Hessler-Radelet , and the United States of America
    caused Mr. N'Diaye legal wrong when they did not pay his due severance benefits, and
    Mr. N'Diaye is entitled to relief under the Administrative Procedure Act.

30. Mr. N'Diaye's right to his severance benefits were stated in the Local Compensation
    Plan, acknowledged by his employer and confirmed by the Maurtanian Department of
    Labor and an independent Mauritanian lawyer. Peace Corps' reversal of its decision to
    pay Mr. N'Diaye was made with no explanation, and there are no legitimate reasons to
    deny Mr. N'Diaye his due severance benefits.

31. Defendants' decision to not pay due severance benefits was arbitrary, capricious, an
    abuse of discretion, or otherwise not in accordance with the law.


                            SECOND CLAIM FOR RELIEF
                    DEFENDANTS' DECISION TO NOT HEAR APPEAL
                 CAUSED PLAINTIFF LEGAL HARM (5 U.S.C. §§ 701-706)

32. The prior paragraphs are herein incorporated by reference.

33. Defendants Jo Ellen Powell and the United States of America caused Mr. N'Diaye legal
    wrong when they declined to hear his appeal, and Mr. N'Diaye is entitled to relief under
    the Administrative Procedure Act.

34. Defendants defied directives from the U. S. Department of State's Foreign Affairs
    Manual and the Local Compensation Plan which mandate that the heads of U. S.
    Missions are to make final decisions on the grievances of FSNs regarding severance
    benefits. Defendants unlawfully refused to hear Mr. N'Diaye's appeal, eliminating his
    sole means of appeal.

35. Defendants' decision to not hear Mr. N'Diaye's appeal was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law.

36. Defendants' decision to not hear Mr. N'Diaye's appeal was without observance of procedure required by law.

THIRD CLAIM FOR RELIEF
DEFENDANTS' LACK OF RULES
FOR GOVERNING GRIEVANCE PROCEDURES
CALLS FOR DE NOVO REVIEW (5 U.S.C. §§ 701-706)

37. The prior paragraphs are herein incorporated by reference.

38. Defendants Jo Ellen Powell and the United States of America caused Mr. N'Diaye legal wrong when they failed to provide Mr. N'Diaye with the rules guiding appeal of a decision about severance payments.

39. Though he repeatedly asked for them, the U. S. Mission of Nouakchott did not supply Mr. N'Diaye with the rules for appeal, though his access to them is guaranteed by the LCP.

40. Mr. N'Diaye's access to the rules of appeal are necessary for fair and equal participation in an appeal that is adjudicatory in nature, and without them, the U.S. Mission's factfinding procedures are inadequate.

41. Defendants' inaction in providing rules governing the grievance procedure for denial of severance benefits is unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

WHEREFORE, based on the authority of § 706 (2) of the APA, Mr. N'Diaye asks this Court

to:

1) Find Defendants' actions arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with the law;

2) Find Defendants Jo Ellen Powell's and United States' actions were without observance of

procedure required by law;

3) Give *de novo* review to Mr. N'Diaye's claim to severance benefits;

4) Order that Mr. N'Diaye be paid his due severance benefits plus interest, an amount to be

calculated but around $10,000;

5) Award attorneys fees and costs pursuant to 28 U. S. C. § 2812, 5 U. S. C. § 504 et. seq.;

and

6) Any other relief which this court decides is necessary in the interests of justice.


Respectfully submitted this 10th day of April, 2013,


Rachael A. S. Moshman
Attorney for Amadou N'Diaye
DC Bar No. 980349
2000 P Street, NW, Suite 415
Washington, DC 20036
Phone: 202-441-1357
Fax: 202-331-0567
rachael@rasmlaw.com

9